# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Civil Action No. 18-cv-00876-CMA

DEBORAH DAVIS,

    Plaintiff,

v.

NANCY A. BERRYHILL, acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

This matter is before the Court on review of the Social Security Commissioner's decision denying Plaintiff Deborah Davis' ("Plaintiff") application for disability benefits.[1] Jurisdiction is proper under 42 U.S.C. § 405(g).

Plaintiff argues that the administrative law judge's ("ALJ") determination that Plaintiff is not entitled to disability benefits amounts to reversible legal error for several reasons: (1) the weight the ALJ gave to the opinion produced by Ellen Ryan, MD was not based on substantial evidence; (2) the ALJ failed to consider non-severe limitations in

---

[1] The Court notes that Plaintiff filed a subsequent application for Disability Insurance Benefits and Supplemental Security Income on August 9, 2018, and, in a Notice of Award dated November 23, 2018, the Social Security Administration found that Plaintiff became disabled on December 12, 2017. (Doc. # 18.) However, Plaintiff is still pursuing her appeal of the ALJ's December 11, 2017 decision, which is based on an alleged onset of disability beginning June 27, 2015. (*Id.*) The Court further notes that the instant order from this Court has no impact on Plaintiff's November 23, 2018 award of benefits.

the ALJ's residual functional capacity determination; and (3) the ALJ failed to explain why some but not all of the limitations noted by Victor Nwanguma, MD were adopted. (Doc. # 14.)

For the reasons set forth below, the Court affirms the decision of the Commissioner to deny Plaintiff's applications for disability benefits.

## I. **BACKGROUND**

Plaintiff suffers from a number of health issues including chronic respiratory failure, obstructive sleep apnea, depression, obesity, and grade IV chondromalacia of the right knee—for which she had knee surgery on December 14, 2016. (Doc. # 14 at 3.) Plaintiff is also dependent on oxygen. Plaintiff's last day of employment was on July 1, 2014. (*Id.*)

On June 28, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits. (AR at 19.) Plaintiff also filed an application for supplemental security income on July 27, 2016. In both applications, Plaintiff alleged disability beginning June 27, 2015. Plaintiff's claims were denied on March 16, 2017. (*Id.*)

Subsequently, Plaintiff filed a written request for a hearing on May 15, 2017. (*Id.*) Plaintiff, represented by counsel, appeared and testified at a hearing held before an ALJ on September 21, 2017. Doris J. Shriver, an impartial vocational expert, also appeared at the hearing. On December 11, 2017, the ALJ issued a written decision in which the ALJ noted that when Plaintiff was asked about her activities of daily living, Plaintiff indicated:

> She was able to maintain personal care, including dressing, bathing, grooming, and feeding herself, albeit with knee pain and inconvenience of her oxygen tube. [Plaintiff] denied needing any reminders to take care of personal needs or grooming, and indicated she used a pill organizer for her medications. She denied needing reminders to go places. [Plaintiff] endorsed preparing meals on a daily basis, but denied completing house chores due to irritation from dust and other airborne particles. She indicated an ability to drive, but denied going out alone. [Plaintiff] noted she shopped in stores twice per month, and was able to manage financial accounts. She endorsed hobbies of painting, reading, and watching television. She noted socializing with family on a weekly basis. [Plaintiff] denied any problems getting along with family, friends, or neighbors, but reported her social activities had diminished due to her breathing difficulties. She averred she was able to walk ½ block before she needed to rest for fifteen minutes. She estimated an ability to lift and carry five to twelve pounds. [Plaintiff] indicated she did not finish what she started, and had problems remembering and concentrating. She reported that stress and changes in routine caused anxiety and shortness of breath.

(*Id.* at 25.) The ALJ concluded that Plaintiff "described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations." Similarly, with regard to the medical evidence in the record, the ALJ concluded that "the objective findings fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations." (*Id.*)

Therefore, the ALJ determined that Plaintiff was not disabled for purposes of her claims for disability, disability insurance benefits, and supplemental security income. (*Id.* at 31.) On March 8, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (*Id.* at 2.) Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security. (*Id.*); *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006). The Council's decision not to review Plaintiff's case gave rise to the instant action.

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's decision, the Court is limited to determining "whether the findings are supported by substantial evidence and whether the Secretary applied the correct legal standards." *Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). First, the Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938). "Substantial evidence is more than a scintilla, but less than a preponderance . . . ." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).

In reviewing the record to make the substantial evidence determination, the Court "may not reweigh the evidence nor substitute [its] judgment for the Secretary's." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). In addition, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation marks and citation omitted). Also, the Court "defer[s] to the ALJ on matters involving the credibility of witnesses." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

Second, in addition to the absence of substantial supporting evidence, "[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."

*Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). "There are specific rules of law that must be followed in deciding whether evidence is substantial in these disability cases." *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

However, not every error in evaluating evidence or applying the correct legal standard warrants reversal or remand. "Courts may not reverse and remand for failure to comply with a regulation without first considering whether the error was harmless." *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (recognizing that the Tenth Circuit has "specifically applied [the principle of harmless error] in social security disability cases" and collecting cases). Harmless error exists where it is "inconceivable" that a different administrative conclusion would have been reached absent the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

### III.   ANALYSIS

To determine whether a claimant is disabled as defined in 20 C.F.R. § 404.1505, the Social Security Administration has established a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987). Specifically, the ALJ must determine whether the claimant: (1) is engaging in substantial gainful activity; (2) has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; (3) has an impairment or combination of impairments of a severity which meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual

5

functional capacity to perform the requirements of her past relevant work; and (5) is able to do any other work considering her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520. If a determination is made at any of the steps that the claimant is or is not disabled, "evaluation under a subsequent step is not necessary." *Williams v. Bowens*, 844 F.2d 748, 750 (10th Cir. 1988).

In the instant case, the ALJ concluded that Plaintiff "is capable of performing [her] past relevant work as a telephone solicitor," and, therefore, Plaintiff was not disabled pursuant to step four of the five-step sequential evaluation. (AR at 30.) Plaintiff argues that the ALJ erred in three ways. (Doc. # 14.) The Court addresses each in turn and concludes that reversal is not warranted.

## A. WHETHER SUBSTANTIAL EVIDENCE SUPPORTED THE WEIGHT THAT THE ALJ ATTRIBUTED TO THE OPINION PRODUCED BY ELLEN RYAN, MD

Plaintiff argues that the weight that the ALJ attributed to Ellen Ryan, MD's opinion was not based on substantial evidence. (Doc. # 14 at 4.) Specifically, Plaintiff asserts that the ALJ was not justified in attributing substantial weight to Dr. Ryan's opinions while giving little weight to Judith Ray, PhD's opinions. (*Id.* at 4–5.) Dr. Ray concluded, *inter alia*, that Plaintiff was "moderately" limited in her ability to: perform detailed and complex tasks; maintain regular attendance; perform work activities on a consistent basis; complete a normal workday or workweek without interruptions resulting from any psychiatric conditions; and deal with the usual stressors encountered in competitive work. (AR at 697.) Dr. Ryan, by contrast, concluded that Plaintiff had only "mild" difficulties: understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (*Id.* at 28, 104.)

6

20 C.F.R. § 404.1527(c) provides six factors that bear on deciding the weight given to any medical opinion:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301; *see also* 20 C.F.R. § 404.1527(c)[2].

The regulation in place at the time of Plaintiff's disability claim also delineates rules applicable to "[s]tate agency medical and psychological consultants, other program physicians and psychologists, and medical experts [the Social Security Administration] consult[s] in connection with [ALJ] hearings and Appeals Council review." 20 C.F.R. § 404.1527(e). Relevant here, it explains that "[s]tate agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified . . . [and] are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). The regulation thus requires an ALJ to "consider opinions of state agency medical or psychological consultants . . . as opinion evidence," *id.*, "using the relevant factors in [20 C.F.R. § 404.1527(a)–(d)]," 20 C.F.R. § 404.1527(e)(2)(ii).

In the instant case, the ALJ properly considered the 20 C.F.R. § 404.1527(c) factors relevant to the opinions of both Dr. Ray and Dr. Ryan. The ALJ decided Dr. Ray's

---

[2] The pertinent regulation, 20 C.F.R. § 404.1527, was amended and the related ruling, SSR 96-2p, was rescinded as of March 27, 2017. However, in this case, the Plaintiff filed her claim on September 21, 2017. The Court therefore considers the regulation and ruling in place in at that time, as § 404.1527 indicates.

opinion—that Plaintiff had some moderate limitations—would be given "little weight" because "[t]he doctor's opinion is based on a one-time examination, is inconsistent with the objective medical evidence of record, and seemingly relied heavily on the claimant's subjective complaints." (AR at 30.) Conversely, the ALJ decided Dr. Ryan's opinion—that Plaintiff's limitations were no more than mild—would be given "great weight" because the "limitations noted by [Dr. Ryan] are well supported with specific references to medical evidence" and because "[t]he opinion is internally consistent as well as consistent with the evidence as a whole." (*Id.* at 28.) The ALJ also found that there was "no objective evidence contradicting [Dr. Ryan's] findings." (*Id.*) Thus, the ALJ evaluated the opinions based on: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant evidence; and consistency between the opinion and the record as a whole. 20 C.F.R. § 404.1527(c).

However, Plaintiff argues that the ALJ's analysis is either incorrect or unsupported by the record, and is, therefore, not based on substantial evidence. Specifically, Plaintiff asserts that the ALJ should not have given Dr. Ryan's opinion great weight and Dr. Ray's opinion little weight because: (1) Dr. Ray "actually had an in-person examination of [Plaintiff]" whereas Dr. Ryan only reviewed medical records; (2) the ALJ erroneously found that Dr. Ryan's opinion was uncontradicted by objective evidence because Dr. Ray's opinion was different from Dr. Ryan's; (3) the ALJ erroneously found that Dr. Ray's opinion was inconsistent with other evidence in the record; and (4) "the ALJ points to

nothing in the record to support the finding" that Dr. Ray relied heavily on Plaintiff's subjective complaints. (Doc. # 14 at 5–6.)

Plaintiff's contentions do not establish that the ALJ's decision was not based on substantial evidence. While Dr. Ryan did not physically examine Plaintiff, Dr. Ryan was able to refer to Dr. Ray's notes and was able to consider Dr. Ray's findings within the context of Plaintiff's medical history. Dr. Ryan considered that Plaintiff suffered from depression but was treating it with medication. (AR at 104.) Additionally, Dr. Ryan noted that Plaintiff displayed "normal memory and appropriate mood and affect" and coherent and organized thoughts. (*Id.*) Dr. Ryan further noted that Plaintiff could adequately engage in relevant activities such as caring for herself, shopping, driving, and managing her finances. (*Id.*)

In light of Plaintiff's ability to maintain a functional lifestyle and her ability to engage socially with others, Dr. Ryan reasonably concluded that, overall, Plaintiff's mental impairments were mild. (*Id.*) Therefore, Dr. Ryan's analysis constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" that Plaintiff's mental impairments were mild rather than moderate, as Dr. Ray had suggested. *Consol. Edison Co. of N.Y.*, 305 U.S. 197, 217 (1938). Moreover, although Dr. Ryan's opinion differs from Dr. Ray's, the Court "may not displace the agency's choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (quotation marks and citation omitted).

Plaintiff's arguments that the ALJ erred in finding Dr. Ray's opinion was inconsistent with evidence in the record and that there was insufficient evidence for the ALJ to conclude that Dr. Ray relied heavily on Plaintiff's subjective complaints are similarly unavailing. For instance, Dr. Ray opined that Plaintiff was moderately limited in her ability to perform work activities on a consistent basis and in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric conditions. (AR at 697.) However, the ALJ could have reasonably concluded Dr. Ray's opinion—that Plaintiff's psychological symptoms were significant enough to interfere with Plaintiff's ability to work—was inconsistent with evidence in the record pertaining to Plaintiff's lifestyle and work history.

For example, although Plaintiff claimed to have started feeling depressed in 1991, Plaintiff consistently maintained one job from 1996 to 2007, and Plaintiff ultimately left that job for reasons unrelated to her mental health. (*Id.* at 693–695.) Moreover, although Dr. Ray noted that Plaintiff's symptoms worsened after she lost her job in 2014 and put her dog down in 2016, Plaintiff was still able to consistently maintain a functional lifestyle, which is inconsistent with Dr. Ray's opinion that Plaintiff would be moderately limited in maintaining a consistent work schedule because of her psychiatric conditions. (*Id.*) Further, due to the significant evidence of Plaintiff's functionality, the ALJ could have reasonably deduced that Dr. Ray's opinions were primarily based on Plaintiff's subjective reports of her symptoms.

Accordingly, substantial evidence supported the ALJ's to decision to attribute more weight to Dr. Ryan's analysis than Dr. Ray's. Additionally, the ALJ considered the

proper criteria when determining the weight to which each opinion was entitled. Therefore, the ALJ did not commit reversible error by attributing "great weight" to Dr. Ryan's opinion that Plaintiff's mental impairments were mild rather than moderate. (*Id.* at 28.) To conclude otherwise, the Court would, in effect, impermissibly "reweigh the evidence [and] substitute [its] judgment for the Secretary's." *Glass*, 43 F.3d at 1395 (10th Cir. 1994).

**B.   WHETHER THE ALJ FAILED TO CONSIDER NON-SEVERE LIMITATIONS IN HER RFC DETERMINATION**

Plaintiff argues that the ALJ failed to adequately consider limitations related to her mental health in the ALJ's determination that Plaintiff was not disabled. (Doc. #14 at 7.) Specifically, Plaintiff asserts that the ALJ erred by not including Plaintiff's non-severe mental limitations in the Residual Functional Capacity ("RFC") determination and by not explaining why those limitations were excluded. (*Id.*) However, Plaintiff's argument is not supported by the record.

With regard to Plaintiff's RFC, the ALJ's findings were as follows:

> *After careful consideration of the entire record*, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can stand and walk slightly less than two hours per eight-hour day; sit at least six hours per eight-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; . . . and can frequently but not continuously speak with others. In making this finding, *the undersigned has considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . . *The undersigned has also considered opinion evidence* . . . .

(AR at 25) (emphasis added). Reviewing courts generally "take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d

1168, 1173 (10th Cir. 2005); *see, e.g.*, *Manning v. Colvin*, 182 F. Supp. 3d 1156, 1164 (D. Colo. 2016) (same). Moreover, the "Tenth Circuit has made clear that an ALJ's findings at steps two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations in assessing residual functional capacity at step four."[3] *Manning*, 182 F. Supp. 3d at 1164 (citing *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*, 543 F. App'x 824, 826–827 (10th Cir. 2013); *Miller v. Astrue*, No. 11-cv-00961-REB, 2012 WL 1388706, at *5 (D. Colo. 2012), *aff'd*, 520 F. App'x 741 (10th Cir. 2013)). Further, although the "regulations obligate the ALJ to *consider* whether the plaintiff's severe and non-severe impairments in combination are severe, *see* 20 C.F.R. § 404.1523, they do not require [the ALJ] to specifically *address* all such factors" in the RFC determination. *Id.* (citing *Birkle v. Colvin*, 82 F. Supp. 3d 1308, 1314 n.8 (D. Colo. 2015)).

In the instant case, there is "nothing in this record to cast doubt on the ALJ's representation that [the ALJ] considered" all of Plaintiff's symptoms and limitations while determining the appropriate RFC. *Id.* In fact, the record shows that the ALJ extensively discussed Plaintiff's mental limitations in the ALJ's RFC analysis. (AR at 24–30.) Therefore, the ALJ's "implicit conclusion that there was no basis for including further limitations attributable to plaintiff's mental impairment does not constitute reversible error." *Manning*, 182 F. Supp. 3d at 1164.

---

[3] The Court notes that the ALJ discussed Plaintiff's mental impairments in the ALJ's analysis of step two of the five-step sequential evaluation—whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe—and concluded that "[b]ecause [Plaintiff's] medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas, it is nonsevere . . . ." (AR at 23.)

## C. WHETHER THE ALJ FAILED TO ADEQUATELY CONSIDER ALL THE EVIDENCE PRODUCED BY VICTOR NWANGUMA, MD

The ALJ determined that Plaintiff "is capable of performing past relevant work as a telephone solicitor" because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." In reaching that determination, the ALJ considered the opinion of Victor Nwanguma, M.D. to be "persuasive and entitled to great weight in reaching a conclusion as to [Plaintiff's] physical functional capacity because the medical expert is a specialist who is familiar with social security policy and regulations, he personally examined [Plaintiff], and provided an explanation [which] references his examination findings to support his opinion." (AR at 29.) The ALJ summarized Dr. Nwanguma's opinion as follows:

> [Plaintiff] would have limitations working in a fast-paced environment due to her easy fatigability and oxygen dependency; was able to stand or walk four hours per eight-hour workday; it was medically necessary to use three liters of supplemental oxygen by nasal cannula per day; could lift and carry ten pounds frequently and twenty pounds occasionally; occasionally climb stairs and ladders, stoop, crouch, kneel, and crawl; and must avoid working around chemicals, dust, fumes, and gases as well as extremes of temperature.

(*Id.*) Despite the opinion's persuasive value, however, the ALJ did not endorse all of Dr. Nwanguma's conclusions in the ALJ's ultimate RFC determination.

Plaintiff argues that the ALJ failed to adequately address Dr. Nwanguma's opinion that Plaintiff would "have limitations working in a fast-paced environment due to her easy fatigability and oxygen dependency." (Doc. # 14 at 7; AR at 688.) Specifically, Plaintiff asserts that Dr. Nwanguma's opinion about Plaintiff's limited ability to work in a fast-paced environment "should have been included in the ALJ's residual functional capacity assessment" or "[a]t the very least, the exclusion of Dr. Nwanguma's opinion should

13

have been addressed by the ALJ." (Doc. # 16 at 2.) Plaintiff supports her position by arguing that her employment "was terminated because she was not doing the work fast enough," which suggests that her past relevant work was too fast-paced. (*Id.*)

As a preliminary matter, the Court notes that although the ALJ did not explicitly include a reference to a "fast-paced" work environment, the ALJ did address Plaintiff's work-speed limitations in the RFC. In particular, the ALJ recognized that Plaintiff "can frequently but not continuously speak with others." (AR at 24.) By addressing Plaintiff's limitation that requires a reduced frequency of interpersonal interactions in the workplace, the ALJ addressed the rate at which Plaintiff could be expected to perform her duties as a telephone solicitor. In effect, the ALJ did incorporate Dr. Nwanguma's work-pace opinion in the RFC, albeit implicitly.

Assuming *arguendo* that the ALJ did not incorporate Dr. Nwanguma's work-pace opinion, the error would not be reversible. The Supreme Court has held that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted). Additionally, courts have held that an ALJ's failure to adopt every part of a consulting examiner's opinion is harmless if the opinion was generally consistent with the ALJ's non-disability finding. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (emphasizing that error is harmless if ALJ developed an RFC consistent with the opinion in some areas but more favorable to the claimant than the opinion in other areas).

In the instant case, Plaintiff's arguments do not establish that the ALJ's alleged error was harmful. The ALJ's RFC determination was generally consistent with Dr.

Nwanguma's opinion in that both recognized that Plaintiff could not work around various environmental irritants or extreme temperatures and Plaintiff was limited in the amount of time that she could ambulate in a given day. *See* (AR at 24, 688). However, the ALJ's RFC determination was more favorable to Plaintiff than Dr. Nwanguma's opinion.

For instance, Dr. Nwanguma concluded that Plaintiff could: stand and walk for up to *four hours* in an eight-hour workday; *occasionally* climb stairs, ladders, stoop, crouch, kneel, and crawl; and sit without limitation. (*Id.* at 688.) In the ALJ's RFC determination, on the other hand, the ALJ found that Plaintiff could: stand and walk "slightly less than *two hours* per eight-hour day"; "*never* climb ladders, ropes and scaffolds"; and "*never* kneel or crawl . . . ." (*Id.* at 24) (emphasis added). Accordingly, because the ALJ's RFC determination was generally consistent with Dr. Nwanguma's opinion—and was actually more favorable to Plaintiff in various respects—the ALJ's lack of inclusion of Dr. Nwanguma's work-pace opinion would not have prejudiced Plaintiff. Therefore, omitting that portion of Dr. Nwanguma's opinion would not have been reversible error. *Keyes-Zachary*, 695 F.3d at 1163.

## IV. **CONCLUSION**

This Court finds that the ALJ's decision was supported by substantial evidence and the ALJ committed no legal error in reaching the ALJ's adverse finding as to Plaintiff's disabilities.

Accordingly, it is ORDERED that the ALJ's denial of Plaintiff's claims for disability, disability insurance benefits, and supplemental security income for the period of June 27,

2015, through December 11, 2017, is AFFIRMED. It is FURTHER ORDERED that each party shall pay its own costs and attorneys' fees.

DATED: January 10, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge